Case number 23-1046, Citizens Action Coalition of Indiana, Inc. Petitioner v. Federal Energy Regulatory Commission. Ms. Datla for the petitioner, Ms. Chu for the respondent, Mr. Marotta for the intervener. Good morning, counsel, whenever you're ready. Good morning, your honors, and may it please the court. I'm Kirti Datla representing Citizens Action Coalition of Indiana. FERC's certificate order authorizing the Henderson County Expansion Project rested on three errors. First, FERC stated that the project would cause the retirement of a coal plant and therefore reduce downstream greenhouse gas emissions without confronting the contrary conclusion in the very document that it relied on, the record evidence, and CAC's arguments which show that no such causal connection exists. Second, FERC didn't assess the significance of those emissions as NEPA requires or respond to the argument that it needed to consider them as part of its Section 7 determination under the Natural Gas Act. And third, FERC defined the purpose and need of this project so narrowly as to preclude consideration of reasonable non-gas alternatives which affected its analysis under NEPA and the Natural Gas Act. I'd like to start today with the straightforward claim that might avoid the need to address other issues in the case. Straightforward, factual claim, right? So you need to show no substantial evidence. I'm sorry, your honor, I'm a little hard of hearing if you could. I'm sorry. Doesn't seem to be projecting too well. It's a factual claim, right? Our argument is that it's an arbitrary determination and in fact there's a failure to respond to contrary evidence in the record and contrary arguments in the record. But I think even if you accept Texas gas's characterization as a substantial evidence challenge, there's just no evidence in the record supporting it. But we would frame it as a classic arbitrary and capricious claim. I think the arbitrary nature of FERC's statement can be summed up in three sentences. At day 266, FERC states that the final EIS explains that the project will result in a net reduction of downstream greenhouse gas emissions due to CenterPoint's retirement of coal fired generation at the AB power plant. Second, the very page on which the order cites for that proposition states that the table presenting those emission estimates is not used to determine project impacts or to establish a baseline for comparison with proposed project emissions. And third, FERC provides no explanation in the order for how it reached a conclusion that's contrary to the very document on which it relies and provides no response to CAC's arguments as to why that conclusion is untenable in light of the record. The court should send this issue back to FERC to either provide an explanation or to correct its statement about the causal connection and the nature of the downstream greenhouse gas emissions in this case. Ms. Talliff, I can ask you about your argument about FERC's purpose here, which appellants say is overly narrow. But in your briefing, there's a concession that FERC can't order the Indiana state utility to make a different choice, right? Indiana has chosen to build a gas-fired plant and then will need a pipeline to bring natural gas to its plant. And your submission is not that FERC can make any different choice. So if that's the case, then how is the purpose defined too narrowly? So we think the purpose is defined so narrowly in this case for, you know, I think it can be seen at JA145, for example, where the purpose and need of the statement is to provide up to 223 decatherms of natural gas to these specific power plants. So it's basically the project proposal. But I take your question to be asking, you know, why did FERC need to consider other alternatives given that Indiana had decided that it has a preference for natural gas? And I think the response is that in any situation where a pipeline is connected to an end use, there are going to be two relevant actors in this situation. There's going to be the regulator of the pipeline, which is FERC, and there's going to be the regulator of the end use, which in this case was the Indiana Commission. But neither of those determinations on either side of that bind the other person. And I think, you know, one clear way to... They're not binding, but FERC can't require Indiana to choose a different method of, you know, providing power to its citizens. Right. I think what FERC can do is say under its authority, under the Natural Gas Act, it has an interest of public convenience necessity. And if there is a reasonable alternative on the table, then it has to weigh that alternative as against the pipeline proposal. And I don't take FERC to have said in light of Indiana's decision, you know, that the status quo has changed so much that it's impossible for any other alternative to come about if we deny this pipeline. What it said is that we're blinding ourselves. We're walling off any consideration of whether there is a non-natural gas alternative on the table because of Indiana's decision. What's the alternative? What's the reasonable alternative they've excluded? Yes. Something other than natural gas. So I think we think the set of reasonable alternatives comes from one of the, you know, proper purpose and needs that FERC could have relied on, which is actually... I mean, do nothing? No, not at all. So we take the purpose that sort of legally sufficient purpose and need of this project to be to provide reliability when intermittent resources are down. And as we explained in the rehearing petition and put evidence into the record, that sort of backup reliability power can be provided through many mechanisms such as battery storage, demand response reduction, buying electricity off the grid, which is exactly what is happening right now, now that there is no natural gas plant online and the coal plant has been shut down and that mix of electricity generation has changed. But then you're using FERC's authority over transportation to second guess Indiana's judgment with respect to generation. Yeah, so I would say two things. Which I would think you would embrace. They're shutting down coal plants. They're replacing them with renewables. And they need, they want a natural gas backup so people can turn the lights on on cloudy days. Yeah, so I think I would say maybe three things in response. So first, I don't think we would consider this to be second guessing. I think this would be FERC making an independent judgment that the requirements of the Natural Gas Act have been met. And second, I would say, I don't think this is a controversial proposition. So the transatlantic, sorry, transcontinental pipeline case that's cited in the briefing from 1961, the Supreme Court case, said that FERC's predecessor agency, the Federal Power Commission, could consider end uses when making its determination under the same statutory language here. There, FERC denied a pipeline because it said the natural gas is going to industrial boilers. And in that case, the Federal Power Commission said that coal would be a better use. And that was its reason for denying the pipeline. And so, you know, obviously we recognize that there's, you know, two different actors here and everyone should be respectful of everyone else. But I don't think this is controversial. And the third thing I'll say is that I think there are really important reasons why FERC has to make that independent determination of whether the pipeline is required. Part of that is because FERC is also protecting other states' interests. So the pipeline here crosses through Kentucky and has effects on that state that aren't accounted for in Indiana's process. You can imagine much bigger, much more impactful pipelines that cross many, many states. And FERC's obligation is to take those interests into account. And of course, FERC is also protecting important federal interests in this case, the interests that the public convenience and necessity standard protects, like those of landowners whose property might be taken because of eminent domain, those of consumers who might face higher rate payers, and of course, the environmental impacts. Let me ask you about the social cost of carbon argument. Imagine, I've never heard that phrase, imagine I don't know how it works. What is it? Social cost of carbon tool, social cost of greenhouse gases tool. Yeah, it's an attempt to monetize the impacts of greenhouse gas emissions. But if I could, I just want to make clear that our argument here isn't akin to the ones that this court has seen in prior cases, which is that we're not arguing that FERC was required to use the social cost of carbon to make a significance determination in this case. Our argument is that this court has said in Sable Trail that FERC has to make a significance determination. That's what the NEPA regulations say. That's what FERC's own regulations say. And the order here says we're declining to make a significance determination, and that's what we're challenging here. I could be misremembering, but I think that the rehearing petition specifically mentioned social cost of carbon tool. Yeah, so the argument in the rehearing petition is that FERC has to make a significant determination. It has a whole range of options on the table to do so. One of those we mentioned is the social cost of carbon. Others include comparing the emissions from this project to the emissions reduction goals of the nation or the states. Of course, here there aren't those emission goals. They also include just making a... I'm sorry. You can finish the sentence. Yeah, they also include just making the same kind of qualitative judgment that FERC makes for other environmental impacts that don't have clear bright line rules. So in this very order, FERC discusses, for example, the impact on wetlands and forested lands. There's no bright line rule for significance. It just requires the agency to make a judgment, and it'll get some jufferance on the back end of making that judgment. I think, if I also remember correctly, at least one of the orders or statements in the case, the commissioner said, even if we did social cost of carbon here, it would be... We would reach an insignificance, fine. Am I remembering that right? Yeah, so I think this is in Texas Gas's... I'm sorry. Am I remembering that right? I know you may disagree with it. I'm just asking as a factual matter. Yeah, I think Texas Gas makes the argument that the two of the commissioners wrote statements on the denial of rehearing that said, we disagree. Well, they're the ones who don't want to ever do social cost of carbon, I think. But I think one of the commissioners... One of them is no longer a commissioner, but yes, those two are, yes. But I think one of the commissioners who does want to do social cost of carbon said, in this case, we should just do it because it's going to lead to an insignificance finding here. So why not just say it's insignificant? But again, I might be misremembering. Yeah, so I'll say two things on this. One is that I think... Before you say whether you agree with it, am I remembering correctly? Yes, yes, yes. Sorry, I should have said that. So I agree that the concurrence to Burke's order by two commissioners states this project will reduce emissions. And so we should have said it's not significant. This is dependent on the argument that I started with, which is that the project absolutely does not reduce emissions. But the second thing I'll say, which is maybe a broader point, is that I think the standard order of operations, when we think the agency hasn't explained itself, and that's obviously in a concurrence and not Burke's order, is to send it back to the agency to allow it to do so. Sure, I got that. So I guess I'm wondering, I think I made maybe some common ground here between me and you. I think if you did social cost of carbon and you excluded the closing of the coal plants, I think then you may well be looking... Maybe you'd be looking at a significance finding, a finding of significance. I guess what I would say, and I really want to find common ground here, so I hate to not do that. But I think it's hard to find a finding of significance when the order disclaims that that's what it's doing. And I suspect that the reason the order... I guess I'm talking about a different order. No, the order is you would have them do it. And because if the social cost of carbon of this project is, as the order I think says, between a billion and 12 billion, then it seems like that's significant, which I think maybe you would embrace. But then it's leading to where I'm going with this, which is this is a relatively small project compared to some FERC certificates. And if the cost of this is as much as 12 billion, then when is the benefit of a project ever going to outweigh the carbon costs? So I think I'll say two things. So first, I think you seem to... The question seems to present the issue as a straight up cost-benefit analysis. And I just am not here to take a position on whether that's accurate or not, because it's not an argument we raised in our brief. But I think what I'll say is, at least on the NEPA side of things, it's a procedural statute, and it requires you to say why you think that the ultimate benefits of the action are worth the environmental costs. Maybe there's no reason, there's no way to stop them. The project is so important. Whatever the answer is, it's a procedural statute that doesn't impose substantive requirements. And I think on the Natural Gas Act side of things, it would be like any other agency determination, where as long as it provides good reasons that are not arbitrary, then it's going to get deference on the back end of that determination. But can you imagine a natural gas project with benefits that will outweigh the social costs of carbon? I'm sure I could imagine one, because I don't know... I think this goes back to my first point, which is that I don't know that the way to think about this in the end is as a straight-up monetization of all costs on one side and all benefits on the other. A pretty good candidate for one would be a 25-mile pipeline designed to facilitate conversion to non-renewable, to renewable fuel generation. I think if the question is posing, you know, if we sent this back to FERC and asked them to make a determination, and they decided this is both valid under NEPA and under the Natural Gas Act, I think, as I said before, we think they would get some deference for that under standard administrative law procedures. The problem here is that FERC declined to make a significance determination despite the clear regulations in this court's precedent saying that they have to do so. I think you did oppose the certificate, right? I mean, even before FERC had... I'm sorry, did we oppose? You opposed the certificate here, right? Yeah, we did oppose the issuance of... yeah, we... yes. And maybe I'm... I think I'm hearing you correctly, and I think maybe what you're saying is that the argument about social cost of carbon is linked to a significance determination, not to any other requirement. Yeah, for NEPA purposes... Is that correct? Well, I would just put it slightly more our position is whatever method is chosen to use to assess significance, social cost of carbon is one on the table. As I mentioned, we made arguments as to why there are other alternatives on the table. That has to lead to a significance determination at the end of the road, and part of that is, you know, not just because this court has said so, but because it triggers obligations to consider things like whether those significant effects could be mitigated. But let's say in a we're not only going to put it in the order, but we're going to actually consider it as part of our decision making, and we have considered it, and we consider this to be an environmentally significant action. Is your point that going forward after that, the rest of FERC's analysis can ignore the social cost of carbon? No, that's the first argument in our opening brief, which is that we argue that FERC has to explain whether and how it is weighing any greenhouse gas emissions in its Section 7 determination, and I also think that's the premise of Staple Trail, which is that the reason it matters for NEPA purposes is because it matters for Natural Gas Act purposes. I'm wondering if you could say a little bit more about the relationship between what has to happen under NEPA and what is required for a Section 7 analysis, because you've acknowledged, as our cases do, that NEPA is a purely procedural statute. But it does seem that much of your briefing and your argument here suggests that what happens in the NEPA analysis is essentially connected to how FERC makes its public convenience and necessity argument. Right, so I'm just wondering how you see that interrelationship. Sure, so the entire purpose of NEPA is to inform the agency's ultimate decision, and here the ultimate decision is under Section 7 to make the determination that the pipeline is required in the public convenience and necessity. So there are kind of two basic NEPA issues here. So one is the consideration of alternatives, and as we've been discussing, the failure to consider a reasonable alternative means that the Natural Gas Act determination about whether something is required is sort of necessarily also questionable, because it's hard to say that something is required if you don't know what the action might be. And then on the greenhouse gas emissions, you know, both of the greenhouse gas emissions issues, I think, affect the natural gas analysis because we think FERC got the number wrong. And so any assessment that happened under Section 7, which it isn't clear from the order that any happened at all, but any assessment would have been based on an incorrect figure. And then again, the assessment of significance is relevant because it reflects a judgment from the agency about whether there really are adverse impacts that anyone should care about, and without that, it's hard to see how it weighed into the natural gas analysis. This is very similar to a question I already asked, and so you may think, well, I've already answered it, but I just, I'm not sure I totally understand the answer. What natural gas project would you not oppose? Well, in this case, we're representing clients who live near this natural gas plant, and so probably the only natural gas projects that they would oppose are the ones that directly affect their daily lives. Applying the legal arguments that you make in this case, what natural gas projects are legal? Yeah, I think what I'll say is the only thing we could do, in any way, in the abstract sense of not my clients, but some other way could do, is to say that there are these legal obligations that Congress has said the agency has to meet, and if they don't meet them, then it's subject to challenge. If they do meet them, that argument becomes much harder. Applying the arguments you made in this case, when would FERC ever be able to meet them? Yeah, I think what I've said is that I think there are projects that FERC could decide are meaningful. I have not thought through all of them. Yeah, I haven't thought through all the potential pipeline projects in this country. I just don't have an answer for you on that one. Okay. I appreciate that. Thank you. We'll give you some rebuttal. Ms. Chu, good morning. Good morning. May it please the Court, Susanna Chu representing the Federal Energy Regulatory Commission. Let me start with the first issue that was raised, the retirement of the coal plant and the causation issue. Whether that is framed as a substantial evidence, factual issue, or an arbitrary and capricious argument, the agency was not unreasonable in taking into account that the purpose for this pipeline was to supply natural gas to a power plant in Indiana that is going to supply backup generation for a new portfolio of renewable power sources. The Commission did take that into account because that's the whole purpose of this pipeline. It calculated net emissions resulting downstream from the conversion of this plant from coal to natural gas, and also the fact that this pipeline was going to be used by the coal plant for the first time in a long period of time. The Commission also did the full analysis. It did the analysis of the emissions from the pipeline itself. That analysis is exactly the same analysis that the Commission did in the Alabama municipal case, which came out last week, and the Center for Biological Diversity case from last year. Sable Trail says you have to consider the downstream indirect effects, and one way to read the order is you did two potential analyses. You did one analysis where you just consider the pipeline. You don't consider any downstream effects. You did another analysis where you consider the pipeline, and you consider the downstream indirect effects from the gas plant, but you also consider the closing of the coal plant, and why doesn't Sable Trail require you to do a third analysis, which is the pipeline and the downstream indirect effects of the gas plant, without considering the benefits of closing the coal plant? I think, Your Honor, I think that that is an analysis that is in the environmental impact statement. I believe that the Commission did a full analysis of all of the emissions relating to this project and the power plant downstream of the project, so I think the reasoning... I believe you, but it will help me when I go back and the panel is working on an opinion, whichever way it goes, to be able to know the JA page that you're referring to there. I would have to take a look at... there are multiple tables in the environmental impact statement. My understanding is that... You calculated the social cost of carbon for the downstream emissions from burning the gas, correct? I think so, yes. That's right, the social cost of carbon. In order to monetize to get the social cost of carbon, you need to know the volume of emissions from burning the gas, right? That's right, Your Honor. I didn't write down the page where you did the intermediate step, but I thought you actually went farther by monetizing. Right, Your Honor. Which Sable Trail does not require. That's right, Your Honor. The Commission here actually went farther than it did in prior cases, although it did this analysis in both Alabama Municipal and in Center for Biological Diversity, where it calculated the actual emissions and then it applied the social cost of carbon. It applied all the different discount rates and came up with a range of values. Could it base its decision in part on the social cost of carbon? No, Your Honor. I think the Commission did not rely on the social cost of carbon. It did provide the numbers for informational purposes. The Commission has continued to find that the social cost of carbon is an imperfect methodology for determining the impacts in project-specific cases like this one. Is Sable Trail best read to say FERC has to not only note the downstream effects but also base its decision in part on the downstream effects? I think that's right. The Sable Trail does say that the Commission has to do the downstream analysis, which it did not do in that case, and it has done in every case since then. Doing the analysis is a little bit different than basing your decision, at least in part, on the analysis. Well, that's right. Did you do both here? Well, the Commission did a full analysis that is consistent with Alabama Municipal and with Center for Biological Diversity. It has found that it is not able to make an up or down call on significance for climate change purposes. The Commission has explained that it addresses the significance broadly of greenhouse gas emissions. The climate change section in the environmental impact statement discusses climate change impacts. The Commission does the full analysis of all of the emissions relating to the pipeline and to the power plant. It even went to the stage of calculating potential social cost of carbon numbers, but the Commission has said there isn't a threshold. I'm sorry. Does all of that analysis affect whether something is in the public convenience and necessity in FERC's reasoning? So, FERC relies on the 1999 Certificate Policy Statement to determine whether a project is in the public convenience and necessity. This is explained in the certificate order around paragraph 19, but basically, it does an economic analysis first, and then it proceeds to do an environmental analysis. And that environmental analysis is the NEPA analysis. It is what we've been talking about. So, the whole NEPA analysis is necessarily part and parcel of the Natural Gas Act public convenience and necessity determination. That's why in our brief, we cite to Center for Biological Diversity and the Delaware Riverkeeper case, where the court has found that if the challenges under NEPA fail, then they necessarily fail under the Natural Gas Act as well, because that environmental analysis is necessarily part and parcel of the Natural Gas Act analysis. I'd just like to add that the commission here is a collegial body. It acts by majority vote. And, you know, to the extent that any of the commissioners would have said something else in addition to what was said in the majority order, that is a different issue. You know, in terms of the majority order, it's a different issue. And, you know,  all of the commissioners here agreed that this project wasn't a public convenience and necessity. And the reasoning is a bit of a fudge. I don't think it's a bit of a fudge, Your Honor. I think that, I mean... A bit of a fudge, because people with very different perspectives all think this is an easy case. I mean, some commissioners want to throw out this whole social cost of carbon analysis to begin with, and others want to embrace it, but think this is the easiest case in the world, because you're supporting a renewable generation facility. Well, I hear you, Your Honor. Actually, this is an easy case. And I think actually all the commissioners agreed it's an easy case. It just happens that perhaps some commissioners would have said something else. But it's an easy case. This pipeline is in public convenience and necessity. If it's an easy case, why wouldn't you have just responded to what the petitioners argued in their rehearing petition? Well, the lack of a rehearing order, Your Honor, I think does not undermine any of the reasoning in the certificate order itself. There are times when the commission determines not to issue a What if the rehearing petition... In addition to the environmental statement, those two support the commission's action here. What if the petition for rehearing had made an outcome determinative argument that was undeniably persuasive? Would you have had to respond to it? I think that if it were outcome determinative and it had not been raised previously, then yes, the commission would have had to respond, of course. But in this situation, there was no outcome determinative argument that was made. So I think the commission acted reasonably in deciding to rely on a certificate order. They think it's potentially outcome determined. That's right, Your Honor. Petitioners do think so. But again, I would say Center for Biological support the reasoning that the environmental analysis is part and parcel of the Natural Gas Act Public Convenience and Necessity argument. There's not a separate standard, and this argument falls on the same grounds as it falls on the NEPA statute. Thanks for your patience. Thank you, Ms. Chu. Thank you. Mr. Morata, good morning. Good morning, Your Honor. It may please the Court. Sean Morata on behalf of the intervener, Texas Gas. Let me just get you those JA numbers where the commission did exactly what Sable Trail requires, which is JA 206 and 207, where there's a table where the commission lays out the exact thing that Sable Trail requires. What are the emissions that are going to be created by this downstream power plant? They then also take into account the offsets that are created by the fact and then they go on further at JA 218 and monetize that through the social cost of carbon. Now, admittedly, the commission in this case, like in Alabama Municipal and all the other cases, says we're not really sure what to do with that because it's not clear that social cost of carbon is appropriate at the project level. It's not clear how we take the number that this generates and factor it into Section 7. But it is information that the public and decision makers can rely upon as they think about this issue. And so the commission did exactly everything that Sable Trail requires, because Sable Trail does not require the next step that Ms. Datla is arguing for, which is to say, and then you have to quantify it. And then that quantification has to, in some way, though they're not really sure how able to say, which I think is the same problem that the commission has, how do you take that number and then, you know, stick it on the scales and start doing a Section 7 way? So I think the commission's action here is perfectly consistent with everything that this court has required. It's particularly consistent with everything this court has required because of the net negative finding that the commission made. The commission found, again, consistent with Sable Trail. And Judge Walker, your question suggested that Sable Trail says you have to consider full burn without offsets. Actually, Sable Trail acknowledges that one of the things that gas does is it allows coal to be retired. What Sable Trail went on to say is that doesn't mean you can't quantify emissions at all, just because hypothetically it might allow you to retire coal. Rather, you have to quantify on both sides. You have to look at the foreseeable emissions and the foreseeable reductions and consider both of them together. I guess I took Burke here to be kind of washing his hands of the reduction, saying, yes, we noted the emission reductions from closing the coal plant, but we didn't actually make that part of our basis for our decision. So the FEIS does say we're not treating it as a baseline. But at J.A. 266 to 268, paragraphs 47, 48 of the certificate order, FERC makes a clear net negative finding. It says that it will reduce by upwards of 2 million tons per year emissions because of the retirement of coal. And the fact that the coal unit will retire because of these gas turbines coming online finds ample support and substantial evidence in the record. The petitioners say, no, the coal plant had to be retired and had long planned to be retired. The coal plant just wasn't making money anymore. So it's true the coal plant long had to be retired, but the gas generators replacing it have also been long part of the plan. All the way back to the 2016 plan at page 46 says our 2016 plan calls for construction of a new combined cycle gas turbine in lieu of further investments. The retirement of this coal unit and the replacement of it with these gas turbines have always been gone hand in hand. The reason the gas turbines coming online is why they can cease making investments. I hear the phrase, the line, social cost of carbon, arguably not appropriate at the project level. And maybe this would have been a better question for FERC, but it seems like most of the cases we get are project cases. So what is the non-project level scenario where social cost of carbon would be a better tool according to its proponents? I think what I would say is perhaps used in legislative rules. So maybe that's not FERC, maybe it's EPA, maybe it's some other agency, because of course, FERC decides on the projects that are placed in front of it. But the problem at the project level is, as I think everybody acknowledges, every ton of CO2 that goes into the atmosphere affects global warming in a non-differentiated way. So there is a point when many small impacts add up to one big impact, but FERC has not determined, and I'm not sure anybody's really determined except perhaps for the petitioners, how do you determine when this one small project, which again has been noted, is actually facilitating the transition to renewables, is significantly contributing to global warming? So I think that tends to be the problem. And the problem also is you generate these gigantic numbers, even from the most minuscule projects. I think, and although I understand Ms. Datla is representing clients, so they have their own sort of unique and parochial interests, but I think the overall argument from environmental groups is essentially don't approve any gas project. But that's certainly not what the Natural Gas Act requires, and certainly the commission on this record where they have a gas turbine, which is only going to run two to seven percent of the time to reinforce reliability when the sun doesn't shine or the wind doesn't blow, is certainly in the public convenience and necessity. Unless the court has further questions. Thank you. Ms. Datla, we'll give you two minutes. Thank you, Your Honor. Just a couple of quick points. On the retirement issue, I was struck by the decision of both of my friends on the other side not to confront the lack of support for what FERC actually said, which is that there will be a rejection of downstream greenhouse gas emissions because this project will lead to the retirement of these plants. And just to kind of emphasize how contradictory that is with the document on which it relied, at J175, the final EIS says there's no such causal connection between the retirement of the coal plants and these turbines. At J224, it says there's no such causal connection with the broader plan, to which my friend from Texas Gas referred to. And I think if you look at J48, which has a table produced by Centerpoint Energy, laying out different options for different plans, you'll see the intuitive reason why just saying something is part of a plan does not create a causal connection. There are four plans laid out in that table. Every single one has the coal plants retiring, but not every single one has natural gas turbines providing backup power for intermittent renewable energy. And so I just don't think it's responsive at all to say that there's a plan here. And I want to respond, I think, Judge Katsas, to your question about, you know, isn't this an easy case? And I think even if you set aside the problem... Assuming the causal connection, I understand you're challenging that. Exactly. I mean, if I accept the causal connection, it feels easy to me. Yeah, so I think we would say two things. So obviously, we're strongly disagreeing with the idea that there is a net reduction for either the burn natural gas purposes, but also the explanation that you... I'm sorry, why would that be? Why would there not be a... Yeah, coal is very dirty relative to renewables and natural gas. So the coal fired... And again, assuming the connection, right? You're the backup when you need it. Yeah, so I'll say two things. I think maybe there's some confusion in this case because the coal fired power plants that have been retired are on the same physical site as the new natural gas turbines, but the coal fired power plants are being retired and they're being replaced with renewable energy. The purpose of the natural gas plant is to say, given that we've made that shift, what needs to come in to provide backup renewable power? And that was the discussion about battery power and demand response and all that. But the second thing I'd like to close with is, even if it's a reasonable thing for FERC to have said to say, look, this is an easy case, even if there's no direct causal connection, this is part of a bigger plan and we think it's important to facilitate that plan. And so that's why we're concluding on net, these climate effects aren't significant. And this is how it weighs in the Natural Gas Act analysis. That's nowhere in this order at all. And the thing to do, if you think that's a reasonable explanation on the table, is to send it back to FERC and tell them that they're required to give that explanation rather than just not make a response. Thank you, your honors. Thank you. The case is submitted.
judges: Katsas, Rao, Walker